IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Case No.:

ERMIN KRESO, M.D.,
         Plaintiff

v.

ERIC SHINSEKI, SECRETARY, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, and the UNITED STATES VETERANS' ADMINISTRATION,
         Defendants.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

      Plaintiff, Ermin Kreso, M.D., by and through his attorneys, Rosemary Orsini and Ellen Elizabeth Stewart, Berenbaum Weinshienk P.C., for his Complaint against the Defendants alleges and avers as follows:

      1.    This is an action for declaratory and injunctive relief arising from the United States Department of Veteran Affairs' termination of Dr. Kreso based upon a procedurally flawed hearing in violation of the due process required by the applicable rules, policies, and regulations of the United States Department of Veteran Affairs and the laws and Constitution of the United States.

## I. PARTIES

      2.    Dr. Ermin Kreso (hereinafter "Dr. Kreso") is a citizen and resident of the State of Colorado.

1

3. Dr. Kreso is a physician. Dr. Kreso had been employed as a physician working primarily in the emergency department at the Denver Veterans Administration Medical Center from September 2007, until his discharge in March, 2010.

4. Defendant Ret. General Eric Shinseki, Secretary of Veterans Affairs, is the official representative of the United States Department of Veterans Affairs (hereinafter referred to as the "VA").

5. The Defendant Veterans Administration is a government agency responsible for providing health care to veterans.

## II.  JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 38 U.S.C. §7462(f), and 28 U.S.C. § 1343.

7. The Court has personal jurisdiction over the Defendant because it transacts business in the State of Colorado and this action arises out of those transactions.

8. Venue resides in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391, as all or a substantial part of the acts and omissions that are the basis for this lawsuit occurred in the State of Colorado.

## III.  GENERAL ALLEGATIONS

9. Dr. Kreso began his residency with the Department of Veterans Affairs as a resident at the Denver VA Medical Center Emergency Department in 2003.

10. Dr. Kreso successfully completed his residency program. He applied for formal employment with the Denver VA Medical Center. His application for formal employment named Dr. Jean Kutner, Medical Director, Dr. Thomas Meyer, Medical Director of Ambulatory

Care and Residence Medical Directors, Dr. Susanne Brandenburg and Dr. William Kaehny, all physicians with the VA Medical Center, as references.

11. Dr. Kreso was formally hired in September 2006 by the U.S. Department of Veterans Affairs as a full-time permanent 38 U.S.C. 7401 (1) appointment to work primarily in the emergency department.

12. Dr. Thomas Meyer, M.D., Associate Chief of Staff for Academic Affiliations was Dr. Kreso's supervisor when he began working at the Denver VA Medical Center.

13. Dr. Sandra Baker was appointed as the Emergency Room Director in March, 2008.

14. Dr. Donald Weinshienker was appointed as Associate Chief of Service for Ambulatory Care in May, 2008.

15. During the time period prior to the commencement of the Administrative Investigative Board ("AIB") investigation, Dr. Kreso received proficiency reports in which he was rated in the satisfactory and above categories.

16. In early 2009, Dr. Kreso reported areas of concern he believed were putting veteran patients at risk and issues of security to his supervisor, Dr. Thomas Meyers.

17. In April, 2009, Dr. Kreso, concerned by the lack of attention given to his concerns by Dr. Meyers, engaged in certain whistleblowing activity. Specifically, Dr. Kreso reported to Dr. Weinshienker that certain medical staff employees were putting veteran patients at risk, including but not limited to, unsafely dispensing medications, and not providing adequate care. In addition, Dr. Kreso reported to Dr. Weinshienker that security in the VA emergency department was not adequate.

18.     Shortly thereafter, in May, 2009, Lynette Roff, the Medical Center Director, falsely accused Dr. Kreso of misconduct and subjected him to an administrative investigation by the AIB effective May 15, 2009.

19.     Dr. Kreso was reassigned into the Compensation and Pension Unit pending the outcome of the AIB investigation and not allowed in the emergency department.

20.     During the investigation, the AIB violated various rules and procedures of the applicable VA regulations including *inter alia* those set forth in the VA Administrative Investigations Handbook, such as ordering Dr. Kreso not to speak to anyone about the allegations against him to the point of removing him to the Compensation and Pension Unit which was located in a completely different area of the hospital and prevented him from obtaining certain evidence for his defense.  The AIB also impeded the fact-finding investigation by refusing to call those physician and nurse witnesses with first-hand knowledge regarding the treatment of the patients whose care was being questioned.

21.     In addition, the AIB violated applicable rules, regulations and procedures of the VA by requiring Dr. Kreso to testify before the AIB without knowing the identity of the patients whose care the AIB was questioning or being provided a copy of the patients' medical record and, further, refused to permit Dr. Kreso's attorney to ask him questions when he testified before the AIB.

22.     On November 13, 2009, Dr. Donald Weinshienker issued a Proposed Discharge memorandum to Dr. Kreso.  The November 13, 2009 Memorandum informed Dr. Kreso that the evidence on which the notice of proposed action was based was attached.  Dr. Kreso responded on November 17, 2009 listing at least eleven Evidence Files that were missing or incomplete.

4

Dr. Kreso also requested possible dates for a meeting with Dr. Weinshienker and the VA Medical Center Agency Director to meet and discuss his response.

23. On November 29, 2009, Dr. Kreso attempted to respond to the substance of the allegations against him. He again noted additional missing documents and exhibits that were considered by the AIB but were not included in the Evidence File provided by the AIB. Dr. Kreso noted that Dr. Michael Blieden referred to a number of cases and documents he reviewed with the AIB which were not attached in the Evidence File. Dr. Kreso asked that he be allowed to supplement his response once he received the missing documents and also reminded Ms. Roff, the VA Medical Center Agency Director, that he had requested a meeting with her as offered in Dr. Weinshienker's November 13, 2009, Memorandum. Dr. Kreso did not receive the documents requested but was given the opportunity for a meeting with Director Roff. When Dr. Kreso made his written presentations to Director Roff, he still did not know the identity of the patients.

24. On March 12, 2010, Lynette Roff, executed the Decision Letter on Dr. Kreso's Proposed Discharge sustaining four of the six charges brought against him without providing Dr. Kreso with an adequate opportunity to respond. Significantly, two of the charges that were dismissed – Failure to Follow Supervisor's Instructions and Interfering with the Administrative Investigative Process – were based on Dr. Kreso's attempts to prepare a defense against the false charges.

25. On April 5, 2010, Dr. Kreso appealed his termination to the VA Disciplinary Appeals Board ("DAB") and requested a hearing. Dr. Kreso argued that the major adverse action taken was in error or should not have been taken because there was no credible, medical

5

testimony or documentary evidence that Dr. Kreso's treatment of care provided to patients was substandard or that he lacks competence to practice medicine.

26. Dr. Kreso again noted in his Notice of Appeal that he had been denied and continued to be denied access to documents which supported his position that the care he provided met the standard of care.

27. The Disciplinary Appeals Board hearing commenced on October 13, 2010. Dr. Kreso again raised concerns and objections at the commencement of the hearing as not meeting due process requirements. Specifically, Dr. Kreso again notified the DAB that he continued to be denied access to documents reviewed by the AIB. In addition, Dr. Kreso had requested access to these documents in a Freedom of Information Act request which was also denied. Dr. Kreso appealed to the Central Office for production of these documents which was still pending at the time of the hearing.

28. On the first day of the DAB hearing, October 13, 2010, Dr. Kreso filed a Motion for Sanctions seeking dismissal of the action taken against him because of an email string that occurred just prior to the hearing on October 9th and 10th, 2010. The ex parte communication sent by VA physicians, Drs. S. Franzoso, Weinshienker and Blieden, to the DAB members and other witnesses to testify at the hearing claimed police and security were needed at the hearing suggesting Dr. Kreso was violent and that Dr. Kreso should be searched for weapons beforehand. The ex parte communication was sent solely to prejudice the DAB Members and portray Dr. Kreso as a violent person in need of some sort of restraint.

29. Again, the DAB violated various rules and procedures of the applicable VA regulations including *inter alia* those set forth in the VA Administrative Investigations Handbook by not allowing Dr. Kreso to call certain witnesses on his behalf, refusing to make

certain witnesses available and by not allowing Dr. Kreso to call an expert witness who would testify that Dr. Kreso met the standard of care in his treatment of the patients alleged in the charges against him.

30.    The DAB's violation of Dr. Kreso's due process rights were not harmless.  The DAB relied upon testimony at the AIB and evidence introduced to the AIB.  The DAB specifically made credibility determinations of the witnesses including Dr. Kreso.  The DAB found that "Dr. Kreso's testimony before the DAB was often at odds with his testimony before the AIB and with his representation of the facts in his two written presentations to the Director in response to the proposed removal."  Dr. Kreso's testimony was taken by the AIB without providing him with the requisite knowledge of the identity of the patients for whose care he was being investigated therefore creating the impression Dr. Kreso was not being entirely truthful.

31.    The evidence presented at the DAB hearing showed that Dr. Kreso is a well-trained physician whose base of knowledge, performance, professional competency, and abilities have never been questioned, that Dr. Kreso has never been the subject of a peer review, medical conciliation claim, licensing action, other claim, or lawsuit; and that Dr. Kreso possesses all of the professional qualifications to be a successful and productive physician at the VA if allowed to continue.

32.    The DAB hearing demonstrated that the only basis for Defendants' terminating Dr. Kreso is the campaign began against him after he engaged in whistleblowing activity.

33.    On a date unknown, the DAB issued its decision sustaining in part the charges brought against Dr. Kreso.

34. Dr. Sabharwal, a member of the DAB, wrote a minority opinion concurring with some of the findings of the DAB but significantly found one of the charges was only partially sustained and another charge was not sustained.

35. The DAB affirmed the excessive penalty of Dr. Kreso's discharge again violating the VA's own rules and regulations by failing to impose a like penalty for like offenses, as required. The DAB failed to take into consideration the Douglas Factors that it is required to use to determine whether a penalty is appropriate. Significantly, Dr. Sabharwal disagreed with the penalty of discharge.

36. By letter dated March 17, 2011, Robert Jesse, MD, Principal Deputy Under Secretary for Health entered an erroneous decision approving the decision of the DAB. A copy of the Deputy Under Secretary's final decision with the approved DAB action is attached as Exhibit 1.

37. The Deputy Under Secretary's decision constituted final administrative action of Dr. Kreso's appeal to the DAB.

38. Dr. Kreso has exhausted all his administrative remedies.

39. There is no plain, speedy and adequate remedy otherwise provided by law.

40. Dr. Kreso has timely brought this Complaint against the Defendant.

## CLAIMS FOR RELIEF
## COUNT I – REVIEW OF THE ADMINISTRATIVE ACTION

41. Dr. Kreso hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

42. In determining that Dr. Kreso should be terminated, the Department of Veterans Affairs exceeded their jurisdiction and abused their discretion in making it's decision to terminate Dr. Kreso and has further acted in an arbitrary or capricious manner, denied Dr. Kreso

his statutory rights, acted contrary to constitutional rights, powers, privilege acted in excess of statutory jurisdiction, authority, purposes, or limitations, did not act in accord with the proper procedures or procedural limitations or as otherwise required by law, acted with an abuse of discretion or clearly unwarranted exercise of discretion, made its decision based upon findings of fact that are clearly erroneous on the whole record, made its decision that is not supported by substantial evidence under the record as a whole, and otherwise acted contrary to law, as follows:

  a.  The AIB improperly and without basis or authority failed to give notice to Dr. Kreso of the identity of the patients for whom he was charged with substandard care;

  b.  The AIB improperly and without basis or authority required Dr. Kreso to provide a defense to the charges without the patients' medical information;

  c.  The AIB improperly and without basis refused to allow the physicians and nurses with firsthand knowledge of Dr. Kreso's care for the patients in question to testify;

  d.  The AIB improperly and without basis or authority refused to provide the complete Evidence File;

  e.  The DAB improperly and without basis or authority relied on the AIB's findings including making credibility findings of Dr. Kreso based on the AIB's refusal to identify the patients to whom the AIB was referring in its questioning of Dr. Kreso.

  f.  The DAB improperly and without basis or authority refused to allow Dr. Kreso to call an expert witness to testify that Dr. Kreso's treatment of the patients called into question in the charges met the standard of care;

  g.  The DAB improperly and without basis or authority refused to Order the Defendants to produce the documents missing from the Evidence File;

  h. The DAB improperly and without basis or authority failed to properly consider the relevant and proper merits, criteria and factors with respect to the excessive penalty of discharge;

  i. The DAB improperly and without basis or authority failed to dismiss the charges against Dr. Kreso based on the highly prejudicial ex parte communication with the DAB members by the Denver VA Medical Center, specifically Dr. Weinshienker;

  j. The Denver VA Medical Center improperly and without basis or authority failed to refer Dr. Kreso to formal counseling for his behavior;

  k. The DAB improperly and without basis or authority, took into consideration matters, factors or criteria that are not authorized by law when it terminated Dr. Kreso causing damages and losses to Dr. Kreso;

  l. The DAB improperly and without basis or authority, failed to properly consider the relevant and proper merits, criteria and factors with respect to the care and treatment provided by Dr. Kreso to his patients;

  m. The DAB improperly and without basis or authority, terminated Dr. Kreso;

  n. The DAB improperly and without basis or authority, failed to follow the requirements of the applicable rules and regulations of the VA including those set forth in the VA Administrative Investigative Handbook, and the VA Discipline Appeals Handbook;

  o. The DAB improperly and without basis or authority, failed to follow Department of Veteran Affairs policies and procedures in making its decisions concerning the termination of Dr. Kreso;

  p. The aforesaid final action of the Deputy Under Secretary in approving the DAB action is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

43. Defendants have significantly harmed Dr. Kreso's professional career and reputation and threaten to seek to do further irreparable harm thereto and cause severe economic harm to Dr. Kreso for which he will not be able to obtain adequate compensation.

44. Dr. Kreso is informed and believes, and thereupon alleges, that Defendants acted arbitrarily, capriciously, dishonestly, maliciously, and contrary to laws and their own regulations to harm Dr. Kreso and destroy his professional reputation.

45. Defendants' actions and omissions set forth above have violated and will continue to violate Dr. Kreso's rights to substantive and procedural due process of law guaranteed by the Fifth Amendment to the Constitution of the United States, *inter alia.*

46. As a direct and proximate result of the Defendants' aforesaid actions and omissions Dr. Kreso already has suffered and will continue to suffer irreparable harm to his career, professional reputation and standing, and earning capacity, along with other severe economic harm for which Dr. Kreso will not be able to obtain adequate compensation.

WHEREFORE, based on the full evidence in the record, the Court should find that the DAB exceeded their jurisdiction, abused their discretion, acted in an arbitrary or capricious manner, denied Dr. Kreso his statutory rights, acted contrary to constitutional rights, powers, privileges, acted in excess of statutory jurisdiction, authority, purposes, or limitations, did not act in accord with the proper procedures or procedural limitations or as otherwise required by law, acted with an abuse of discretion or clearly unwarranted exercise of discretion, made decisions based upon findings of fact that are clearly erroneous on the whole record, made decisions that are unsupported by substantial evidence under the record as a whole, and otherwise acted contrary to law in making its decisions to terminate Dr. Kreso, and should award relief to Dr. Kreso as further set forth herein.

## COUNT II
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

47. Dr. Kreso hereby incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

48. By reason of Defendant's violation of Dr. Kreso's due process rights and the procedurally flawed hearing, Dr. Kreso has and will continue to suffer irreparable injury, for which there is no adequate remedy at law. This injury is imminent and ongoing.

49. The VA will formally and irrevocably report Dr. Kreso's termination from the Denver Veteran's Administration Medical Center to state licensing board(s), hospital credentialing committee(s), the National practitioners Data Bank, and/or the Healthcare Integrity and Protection Data Bank based upon the hearing which violated his fundamental rights to due process.

50. In the event of any report, Dr. Kreso will suffer serious, lasting, and irreparable harm to his professional reputation and standing that cannot and will not subsequently be remedied even if Dr. Kreso ultimately prevails and obtains a determination that he should never have been terminated from the Denver Veterans Administration Medical Center.

51. Dr. Kreso has no remedies available to him to restrain and prevent the Defendants from reporting the adverse actions taken against him to the applicable board(s), committee(s), and/or data bank(s).

52. Dr. Kreso requests that a Temporary Restraining Order be entered ordering Defendants to cease, desist, and refrain from, either directly or indirectly through others reporting Dr. Kreso's termination from the Denver Veteran's Administration Medical Center to

state licensing board(s), hospital credentialing committee(s), the National Practitioners Data Bank, and/or the Healthcare Integrity and protection Data Bank.

53. Irrespective of whether this Court enters a temporary restraining order, Dr. Kreso requests that the Court schedule a Preliminary Injunction hearing, ordering Defendants to appear and show cause why the above-requested injunctive relief should not be made the subject of a Preliminary Injunction, pending a trial on the merits.

53. Dr. Kreso further requests that following an evidentiary hearing, a Preliminary Injunction be entered, ordering and enjoining Defendants from engaging in the conduct set forth in paragraph 49 of the Complaint, or such other relief that the Court may deem necessary at the conclusion of the evidentiary hearing. If such relief is not granted, Dr. Kreso will suffer irreparable harm before a review of the record in this case can be conducted. Dr. Kreso has no adequate remedy at law. For these reasons, Dr. Kreso seeks the issuance of a preliminary injunction following an evidentiary hearing.

54. Dr. Kreso further requests that, following a trial on the merits, the Court enter a permanent injunction enjoining Defendants from the above-described acts.

## V.  REQUEST FOR REVIEW AND FURTHER RELIEF

WHEREFORE, in addition to the prayers for relief set forth above, Dr. Kreso respectfully requests that the Court review the record and decision of the Disciplinary Appeals Board confirming Dr. Kreso's termination and conduct all necessary evidentiary or other hearings or trials, and reverse the Disciplinary Appeals Board findings and decision concerning Dr. Kreso's termination as outlined herein and enter an injunction in favor of Dr. Kreso and against the Defendant.

Dr. Kreso further prays for relief as follows:

1. The entry of a judgment declaring and finding that Defendants violated due process and failed to otherwise abide by the Veterans Administration's governing statutes and regulations;

2. The entry of a judgment finding that the Disciplinary Appeals Board hearing was void and invalid because it violated Dr. Kreso's due process rights and that any decision to terminate Dr. Kreso from the Denver Veterans Administration Medical Center is void and ineffective because it was based upon the invalid hearing;

3. Reinstatement of Dr. Kreso as a full-time permanent physician appointment at the Denver VA Medical Center.

4. The entry of appropriate equitable relief, in the form of a preliminary and permanent injunction or otherwise, to rectify the numerous constitutional violations detailed herein and to restrain the Defendants, their agents, employees, and successors in interest from taking any adverse action based upon the procedurally infirm hearing in violation of the Constitutional, statutory, regulatory, and/or common law rights of Dr. Kreso to due process of law;

5. The entry of a preliminary and permanent injunction restraining the Defendants, their agents, employees, and successors in interest from making any reports about or concerning Dr. Kreso;

6. Award of back pay;

7. For reimbursement of Dr. Kreso's costs and expenses herein, including reasonable provision for his attorneys' fees; and

8. For such further and additional relief as the Court deems appropriate and just.

## V.  JURY DEMAND

DR. KRESO DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted this 9th day of September, 2011.

                                BERENBAUM WEINSHIENK PC

                                *Original signature on file at Berenbaum Weinshienk PC*

                                s/ *Rosemary Orsini*
                                Rosemary Orsini
                                370 Seventeenth Street, Suite 4800
                                Denver, Colorado 80202
                                Telephone: (303) 592-8305
                                Facsimile: (303) 629-7610

## VERIFICATION

STATE OF COLORADO   )
                                            ) ss.
COUNTY OF DENVER )

      I, ERMIN KRESO, M.D., have read the foregoing Complaint and affirm that the facts and knowledge set forth herein are true and accurate to the best of my knowledge and belief.

                                                     Ermin Kreso, M.D.

      The foregoing instrument was acknowledged before me this 8th day of September, 2011, by Ermin Kreso, M.D.

      Witness my hand and official seal.

(SEAL)

                                                     Notary Public

My commission expires: 12-19-2014