# RULES OF THE MEDICAL STAFF

Department of Veterans Affairs

Eastern Colorado Health Care System

1055 Clermont Street

Denver, Colorado 80220-3873

August 2006

**EXHIBIT A-6**

## RULES OF THE MEDICAL STAFF

**Section**                                                      **Beginning Page**

Preface.................................................................. 3

Section 1.        Medical Staff.......................................................... 3

                             A.  General.............................................. 3
                             B.  Resident Supervision............................... 4
                             C.  Supervision of Other Staff......................... 5

Section 2.        Patient Care.......................................................... 5

                             A.  General.............................................. 5
                             B.  Emergency Room.................................... 5
                             C.  Admissions......................................... 6
                             D.  Orders.............................................. 7
                             E.  Transfers........................................... 10
                             F.  Medications......................................... 10
                             G.  Blood Products...................................... 11
                             H.  Operative and Invasive Procedures................ 12
                             I.   Consultations....................................... 14
                             J.   End of Life Issues.................................. 15
                             K.  Death Issues........................................ 16

Section 3.        Medical Records...................................................... 19

Section 4.        Quality of Clinical Services......................................... 22

Section 5.        General Rules Regarding Research Investigation.... 23

                             References........................................................... 25

## RULES OF THE MEDICAL STAFF

## DEPARTMENT OF VETERANS AFFAIRS

### Eastern Colorado Health Care System

### PREFACE

The Rules of the Medical Staff are applicable to physicians, dentists, and other licensed independent practitioners (LIPs) who have been credentialed and granted privileges and appointed to the Medical Staff. Residents and fellows are not credentialed, privileged staff (see Resident Supervision Policy, 11-4).

## SECTION 1. MEDICAL STAFF

### A. GENERAL

1. Membership on the Medical Staff is a privilege extended only to professionally competent physicians, dentists, podiatrists, optometrists, psychologists, audiologists, speech pathologists, and advance practice nurses with licensed independent practitioner (LIP) status who continuously meet the qualifications, standards and requirements of the Department of Veterans Affairs Eastern Colorado Health Care System Medical Staff Bylaws and Rules. Advanced practice nurses with LIP status will provide care under collaboration agreements with assigned Medical Staff, in accordance with state regulations.

2. Categories of the Medical Staff include active, associate, affiliate, and honorary teaching. (See Medical Staff Bylaws for specific definitions).

3. Upon application, Medical Staff members must sign an agreement to uphold the Bylaws and Rules of the Medical Staff; to participate in Medical Staff and service/section and committee activities; and to provide assistance in areas or activities (other than their primary assignment) as may be required for patient care and safety, e.g., disasters.

4. All categories of the Medical Staff are required to have a credentials file, which follows VHA Handbook 1100.19 Credentialing and Privileging. This includes primary source verification of education, training, licensure, and drug registration; verification of any board certification; peer appraisals; a statement of health with concurrence of health status; a pledge to comply with the Bylaws and Rules of the Medical Staff and to provide continuous care to patients assigned to them and to arrange for the transfer of care as appropriate; current clinical privileges; an appropriate application for appointment; a current curriculum vitae/resume; and authorization for release of information.

3

## B. RESIDENT SUPERVISION

1. Although various duties may be assigned to residents in accordance with the Resident Supervision Policy (11-4), the ultimate responsibility for care of the patient and compliance with the Completion of Medical Records Policy (136-15) remains with the attending physician.

2. Chiefs of Clinical Services are required to delineate the functions and levels of responsibility for each post-graduate year of training on an annual basis.

3. The attending is responsible for and must be personally involved in the care provided to individual patients in inpatient and outpatient settings, as well as long-term care and community settings. When a resident is involved in the care of the patient, the responsible attending must continue to maintain a personal involvement in the care of the patient. The attending is expected to fulfill this responsibility, at a minimum, in the following manner:

   a. The attending will direct the care of the patient and provide the appropriate level of supervision based upon the nature of the patient's condition, the likelihood of major changes in the management plan, the complexity of care, and the experience and judgment of the resident being supervised. Medical, Surgical, Neurology, Dermatology, Physical Medicine and Rehabilitation or Mental Health services must be either rendered under the supervision of the attending or be personally furnished by the attending. Documentation of this supervision will be by progress notes entered into the record by the attending or reflected within the resident's progress note at a frequency appropriate to the patient's condition. In all cases where the provision of supervision is reflected within the resident's progress note, the note shall include the name of the attending with whom the case was discussed as well as summarize the nature of that discussion.

   b. For patients admitted to an inpatient service of the medical center, the attending must meet the patient early in the course of care (within 24 hours of admission) and personally document, in a progress note, the attending staff member's findings and concurrence with the resident's initial diagnosis and treatment plan, as well as any modifications or additions. The progress note must be properly signed, dated, and timed. Attending staff members are expected to be personally involved in the care of the patients assigned to them in a manner consistent with the clinical needs of the patient and the graduated level of responsibility of the trainee. This must be documented by a personal note by the attending or be reflected in the resident's note.

4

c. The attending physician must know which resident is on service or on call, ensure that the resident and other appropriate individuals know which attending physician is on call for what service, be personally available whenever a resident requests assistance, and check in with on call residents to reiterate the attending physician's availability.

d. The Attending will model proper overall conduct in accordance with the AMA Principles of Medical Ethics, June 2001.

## C. NON- LIPs

1. Non-LIPs with specifically granted clinical privileges, expanded scope of practice, or working under specific protocols will be supervised by assigned Medical Staff members. This includes physician's assistants, non-LIP advanced practice nurses, pharmacists, nurse anesthetists, dietitians and other nursing staff.

## SECTION 2: PATIENT CARE

## A. GENERAL

All patients will be attended by a qualified member of the Medical Staff. Patients are admitted to the service concerned with the treatment of the disease necessitating admission. The same quality of patient care is provided within and across services/sections and between all staff members who have delineated clinical privileges.

## B. EMERGENCY ROOM

1. This medical center's Emergency Room is not a member of the citywide Class I emergency room group to which ambulances with very acute (Level III) patients are directed. The emergency room has the capability to care for occasional Level III patients who may appear, but does not solicit this type of patient. When calls concerning potential Level III patients are received the caller is directed to call "911" for emergent care.

2. Emergency care is provided by Medical Staff members who have either staff or fee basis appointments (specifically in the Emergency Room), with support from all medical center services and facilities. Emergency care is available seven days a week, 24 hours a day at the Denver VA Medical center. All Emergency Room physicians are members of the Active or Associate Medical Staff. Staffing is consistent with the facility E.R. designation under written policies and procedures appropriate to the designated level.

3. Patients in outlying areas will be referred to the nearest emergency room if they are too ill to make it to the Denver VA Medical Center.

4. Persons requiring immediate attention will be provided emergency care without regard to veteran eligibility.

## C. ADMISSIONS

1. Medical Staff members are authorized to admit patients for inpatient care, provided that they have been granted clinical privileges providing that authority.

2. Except in an emergency, no patient shall be admitted to the medical center until after a provisional diagnosis (es) has been stated on the medical record.

3. The medical center shall admit eligible veterans (as defined by law and applicable VA regulations) suffering from any type of disease or injury which, in the opinion of the admitting Medical Staff member, can be treated at this medical center or other individuals for humanitarian reasons until such time as the patient may be transferred to a health care facility equipped to care for the disease or injury. Transfers from DVAMC to other facilities will be conducted in accordance with the Emergency Medical Treatment and Active Labor Act (EMTALA).

4. Any patient, regardless of eligibility, may be admitted for emergency care.

5. Upon admission, the attending physician assumes the responsibility for the inpatient care.

6. The admission history and physical may be performed by a privileged member of the Medical Staff, a resident, or an advanced practice nurse physician's assistant or podiatrist under the supervision of a member of the Medical Staff. Dentists are authorized to perform only the portion of the history and physical that relates to their specialty.

7. All patients admitted to the medical center or nursing home or placed in observation status will have, at a minimum, orders for diet, activity and vital signs initiated within the following time frames:

a. Medical, Surgical, Mental Health Units...............4 hours

b. Critical Care Units.......................................30 minutes

c. Nursing Home Care Unit...............................4 hours

## D. ORDERS

1. General

   a. The patient medical record exists mainly as an electronic document. There may be miscellaneous forms that exist as paper. When referring to the medical record, any reference to written/entered assumes that the information may be electronic or manual. Orders may be written by Medical Staff members and supervised residents. Exceptions are other practitioners who have been granted authority to write orders under specific protocols supervised by a Medical Staff member.

   b. Orders written by non-LIPS that are not covered under a specific protocol will require appropriate co-signatures prior to plan of care. Orders are released to service per "policy".

2. Inpatient Orders

   a. Routine orders of the Medical Staff or residents, specific to a given patient, will be entered in detail in the patient's medical record. These orders will be signed and dated by the ordering person.

   b. Verbal and/or telephone orders

      1) Verbal and/or telephone orders are only accepted in emergencies, under circumstances in which patient care would be compromised by delay, or when seeking clarification of previously written orders. The individual accepting the order will precisely and factually discuss the assessment of the patient with the Medical Staff member. After the provider gives the verbal order, the individual authorized to accept the order writes it down, the order will then be read back to the provider for confirmation.

      2) Verbal/telephone orders may be accepted by Registered Nurses, Respiratory Therapists, Clinical Dietitians, Registered Pharmacists, and Physician's Assistants.

      3) Verbal orders will not be accepted for COR status or do not resuscitate (DNR) status.

      4) Laboratory technicians and technologists may accept verbal/telephone orders for additional studies on pre-existing specimens. Imaging technicians may accept verbal/telephone orders for additional studies on a scheduled patient.

7

5) All verbal/telephone orders must be recorded in the medical record by the individual authorized to accept the order and will include the name of the issuing Medical Staff member or resident. Such orders will be effective immediately. The orders should be signed by the issuing provider at the next opportunity.

c. See Section J (page 15) for orders pertaining to advance directives and DNR status.

d. Medical students will be responsible for having their orders signed by a physician before they can be transcribed and carried out.

e. Standing orders, overprinted orders, or order sets will be carried out only after they are reviewed, dated, and signed by the responsible Medical Staff member or resident.

f. All orders at a minimum will be reviewed and reconciled when a patient:

1) Is admitted or discharged.

2) Is transferred to a location requiring a different level of care.

3) Goes to the operating room and receives general anesthesia or major regional anesthesia.

g. Orders written as hold, renew, repeat, or continue are not acceptable. Expired or discontinued orders must be completely rewritten.

h. Patients shall only be discharged upon the written order of the Medical Staff member or resident. Every effort should be made to initiate discharge orders t 24 hours in advance of the contemplated departure of the patient.

i. Orders for restraints and seclusion shall be written in accordance with the Eastern Colorado Health Care System Policy, Restraint and Seclusion (00-24). PGY1 residents can order restraint and seclusion for behavioral health reasons and conduct face-to-face evaluation of a patient in restraint or seclusion. Only PGY2 and above can order restraints for acute medical-surgical reasons.

j. Ventilation orders will be written exclusively by the Pulmonary attending or fellow, or the Pulmonary resident, in the absence of the attending or fellow. After regular duty hours, the on-call physician for each service may write ventilation orders in consultation with the Pulmonary Section physician on-call.

3. Outpatient Orders

    a. Outpatient orders are typically incorporated in the treatment plan outlined in the progress note.

    b. Outpatient prescriptions must be ordered and signed in the medical record by the authorized prescriber in accordance with the Outpatient Pharmacy Policy (119-1). All schedule II controlled substances require a wet signature prescriptions VA form 10-2577F.

    c. Only registered pharmacists may accept verbal orders for outpatient prescriptions, in accordance with DEA regulations.

4. Miscellaneous Orders

    a. Lodging of Patients

        1) Overnight accommodations (bed and meals) may be provided for self-sufficient patients who report to the medical center for outpatient medical care and live outside a 100-mile radius of the facility, in accordance with the Lodging of Patients Policy (136-20). Medical services, medications, and medical care are not provided.

        2) The Medical Staff member or resident arranging the outpatient care is responsible for completing the Medical Clearance for Lodging form and for making a reservation through Bed Control.

    b. Observation Status

        1) Patients may be admitted for less than 24-hour observation in accordance with the Observation Beds Status Policy (136-4). Observation patients are considered inpatients and orders are written in accordance with inpatient policies and procedures.

        2) Observation patients who are not ready to leave the facility at the end of the observation period (23 hours) must be discharged and readmitted as regular inpatients.

    c. Ambulatory Surgery

        1) Ambulatory Surgery is an outpatient program. Orders are written in accordance with established Day Surgery protocols as outlined in the Ambulatory Surgery Unit: Utilization Policy (00-61).

2) The Medical Staff member or resident of the admitting section is responsible for the medical care of the patient until discharged in compliance with all policies and procedures of the Eastern Colorado Health Care System and unit.

3) The Medical Staff Member or resident will evaluate the patient scheduled for a surgical or diagnostic procedure. An Informed Consent Form (SF-522) will be completed and order written outlining the pre-admission testing desired. Pre-admission testing must be accomplished within 30 days prior to the procedure.

   a. Physical assessment including as least chief complaint, history of present illness, significant past history, allergies, systems review, vital signs, pain, results of pertinent diagnostic tests, review of current medications/treatment, and physical examination; psychosocial screening, other assessments/screening as indicated; review educational assessment as necessary.

   b. H&P progress note must be completed within 24 hours of admission or prior to any major diagnostic or therapeutic interventions (H&P completed within 30 days prior to admission are valid, but need review and updated as needed within 24 hours of surgery).

4) In order to discharge a patient, the responsible Medical Staff member or resident must ensure that the patient meets the discharge criteria set forth on the Post-Procedure/Discharge Instructions Form, write a discharge order, complete the discharge note, and write orders for discharge prescriptions and supplies as needed. Patients receiving general or regional anesthesia require clearance by a designated representative of Anesthesiology Service for discharge from the PACU.

5) If by 3:00 pm, the patient does not meet discharge criteria, the responsible Medical Staff member or resident will be notified. The patient will be admitted or placed in observation status if appropriately determined to be eligible by the responsible Medical Staff member or resident.

## E. TRANSFERS

1. Patients transferred from one service to another or in/out of an intensive care unit or out of the recovery room require an order in the medical record by the Medical Staff member or resident responsible for the care of the patient.

2. Transfers from one service to another will be accomplished by mutual agreement of the services involved and the transfer orders will be reviewed for appropriateness. Orders not pertinent to the patient's condition are to be discontinued by the transferring team.

3. When transferring between services, there shall be an electronic transfer note or interim summary completed by the responsible Medical Staff member or resident. The documentation should be a concise recapitulation of the medical center course to date, developed to assist the Medical Staff member and residents who will assume responsibility for the continuity of inpatient care. In some limited circumstances, it may be necessary to dictate or write the note.

## F. MEDICATIONS

1. All drugs and medications shall only be used in compliance with pertinent VA and FDA rules and regulations.

    a. Non-investigational drugs shall meet the standards of the U.S. Pharmacopoeia Formulary.

    b. Investigational drugs may be used only in conjunction with protocols that have been approved by the Colorado Multiple Institutional Review Board (COMIRB) and in accordance with the Use of Investigational Drugs Policy (119-2). The patient's or his/her legal representative's signature shall be obtained on the approved informed consent, prior to administration of any investigational drug.

2. Automatic Stop Orders

    a. For all inpatient bed services, narcotic orders expire after 7 days. Exceptions may be made if the responsible provider determines that there is a need for a longer duration of therapy (i.e. for chronic pain management). In such cases, narcotic orders may be written for a period not to exceed 14 days. The responsible Medical Staff member or resident will be notified by nursing staff upon expiration of a narcotic order requiring renewal. In the Nursing Home Care Units, narcotic orders will expire after 30 days.

    b. Orders for antibiotics expire after 10 days, unless a longer or shorter duration of therapy is specified by the responsible provider.

3. Pharmacists may make therapeutic medication substitutions when appropriate, and when those medications being substituted have received the prior approval of the Pharmacy and Therapeutics Committee as outlined in the Therapeutic Substitution of Medications Policy (119-6).

4. Patients bringing their own medications into the medical center shall do so only according to the procedures and restrictions outlined in the Processing of Patients Medications Upon Admission (119-9). Medication brought into the medical center will not be utilized (for administration to the patient by medical center personnel) unless the treating physician determines that its use is appropriate and provides a written order.

5. Medications appropriate for self-administration shall be permitted in the NHCU only according to the procedures and restrictions outlined in the Self Medication under Nursing Home Supervision Policy (119-20). Controlled substances will not be self-administered under any circumstances.

## G. BLOOD AND BLOOD PRODUCTS

1. Established medical center policies and procedures for administration of blood and blood products will be followed in accordance with the Bloodborne Pathogens Exposure Control Plan (00-43). Special procedures for identification of patients in the operating or anesthesia room will be followed.

2. Guidelines for the indications for blood product usage and administration are developed by the Blood Utilization Committee and approved by the Clinical Executive Board (CEB).

3. Informed consent is required for transfusions (Informed Consent Policy 136-26). In life-threatening situations, informed consent is not required. In such situations, the responsible provider's judgment and documentation is sufficient.

4. In life-threatening situations, uncrossmatched blood may be ordered and released to anyone assigned. The assigned individual must possess the name and social security number of the patient. The responsible provider must sign the Emergency Release of Uncrossmatched Blood.

5. Patients should be typed and crossmatched a minimum of 24 hours prior to elective surgical procedures.

## H. OPERATIVE AND INVASIVE PROCEDURES

1. A full history and physical examination per paragraph D.4.c.3 will be recorded prior to the start of an elective operation or invasive procedure requiring anesthesia care or conscious sedation. Podiatrists and dentists are responsible for the part of their patient's history and physical that relates to their specialty. An abbreviated history and physical is acceptable for conscious sedation and ambulatory surgery. In all cases, the history and physical must be completed within 30 days prior to the procedure.

2. An operation, other than an emergency, shall not be performed until adequate clinical data is recorded in the medical record as determined by Surgical Service and Anesthesiology Service (i.e., laboratory, x-ray, etc.).

3. Written, signed, informed consent shall be obtained by the responsible Medical Staff member or resident, in accordance with the Informed Consent Policy (136-26), on the proper form with the name of the responsible provider(s) listed, no more than 30 days prior (but always prior) to any operative procedure (except in those situations in which the patient's life is in jeopardy and suitable signatures cannot be obtained due to the condition of the patient). Informed consent will disclose the names and professional training level of the individual(s) performing the procedure or operation, along with the name of the attending physician. The patient must fully understand who will actually be performing the procedure. The operative site must be marked with a marker prior to entering the OR. A "time-out" will be called before the incision to review the operation.

4. All operations will be performed or supervised by the attending Medical Staff member.

   a. Medical students may be permitted to perform minor surgery such as closure of minor wounds, minor excision of cysts, etc., when under the direct supervision of the responsible Medical Staff member or resident.

   b. Medical and dental students on anesthesia rotations can perform minor procedures, including venipuncture and endotracheal intubation under the direct supervision of an anesthesiologist.

   c. Dental students will be allowed to perform minor oral surgery such as biopsies, exodontia, alveoplasty, gingivoplasties, periodontal surgery, etc., when under the direct supervision of an attending dentist.

5. The anesthesiologist shall ensure a complete anesthesia record, to include evidence of pre-anesthesia evaluation and post-anesthetic follow-up of the patient's condition, both in the recovery room and after his/her return to the ward. Any portion of the record or assessment documented or performed by a nurse anesthetist shall be co-signed by the responsible anesthesiologist.

6. Operative reports shall be dictated immediately following surgery and will include a detailed account of the findings at surgery as well as details of the technique(s) employed. An operative report is necessary regardless of the location of the procedure (i.e. intensive care units). Operative reports should be signed as soon as possible following transcription. An operative progress note must be entered in the medical record immediately after surgery, to provide pertinent information for any individual required to attend to the patient. Use of a brief operative note template is encouraged to insure that the minimal required elements are included.

7. Written operational guidelines for the safe use of all general anesthetic agents utilized within the medical center will be maintained by Anesthesiology Service.

8. All specimens will be sent to Pathology and Laboratory Medicine Service, Surgical Pathology Section, for such examinations as are necessary to arrive at a pathologic diagnosis. The following are exceptions to required pathological examination: teeth, tooth fragments, bullets, and toenail parings. All specimens shall remain the property of the medical center, under the custody of the Chief, Pathology and Laboratory Medicine Service. Specimens shall be adequately labeled with the patient's name and tissue source and shall be accompanied by a tissue examination form detailing pertinent identification and clinical information. Specimens may not be released from the medical center for other than patient care reasons without approval of Risk Management and Health Information Management.

9. Recovery room information must include vital signs, level of consciousness upon entering and leaving the recovery room, status of infusions, status of surgical dressings, and status of any tubes, catheters, or drains. The release of each patient from the recovery room shall be based on the decision of the anesthesiologist.

10. There must be evidence in the medical record of a post-anesthesia visit describing the presence or absence of anesthesia-related complications. In addition, each post-anesthesia note should specify the date and time of the visit.

11. All procedures requiring conscious sedation will follow the Eastern Colorado Health Care System Conscious Sedation Policy (11-8) and be performed by Medical Staff members or residents who have met the privileging requirements for provision of conscious sedation. Medical Staff members or residents will be assisted by personnel who have been certified to monitor the patient undergoing conscious sedation. Such procedures can only be performed in locations with appropriate emergency resuscitative equipment and adequate personnel to allow for safe monitoring. The responsible Medical Staff member or resident will ensure that such patients are evaluated, monitored, and recovered using the documentation forms outlined in the policy.

12. All electroconvulsive therapy (ECT) procedures shall be performed in accordance with the Electroconvulsive Therapy Policy (116-3). All ECT will be supervised by a staff anesthesiologist. ECT shall be performed either in the OR or Special Procedures Room. The patient will be monitored and recovered in the PACU.

13. See Item J (page 15) for do not resuscitate (DNR) and advance directive information pertaining to surgical procedures.

## I. CONSULTATIONS

1. Consultant.

   a. A consultant must be well qualified to give an opinion in the field in which an opinion is sought. The status of a consultant is determined by the Medical Staff, on the basis of the individual's training, experience, and competency. The attending Medical Staff member who is responsible for consultations on a specialty service will either render the consultation or personally supervise the consultation by a resident. Documentation of this supervision shall be reflected in the medical record.

   b. Clinical dietitians may be asked to provide patient consultation, based on information on the Initial Data Collection Form completed by nursing staff. Clinical dietitians may also order appropriate laboratory tests including hemoglobin A1c, albumin, cholesterol, glucose, triglycerides, and lipid panel. Laboratory orders written by clinical dieticians must be co-signed by the responsible Medical Staff member or resident.

2. Initiating Consultation Requests. Consultation shall be initiated by the responsible Medical Staff member or resident. The request for consultation shall be documented in the medical record and addressed to the specific service or person. Consultation requests should be stated clearly, setting forth the problem and the information requested. Telephone or verbal requests for consultation will be honored when emergent/priority situations arise, however the request for consultation shall be documented in the medical record.

3. Responding to Consultation Requests. The responsibility for determining policy and assuring timely responses to consultation requests lies with the Clinical Service Chiefs and/or subspecialty Section Chiefs. As a rule, inpatient consultations should be addressed within 24 hours. If response is not made within 24 hours, the request will be called to the attention of the Service Chief by the requesting practitioner. If necessary, the Chief of Staff will be informed. Routine outpatient consultations should be addressed within 30 days. Urgent or emergent consultations should be discussed between the referring and the accepting provider in a time frame appropriate to the patient's condition.

4. Essentials of Consultation. A satisfactory consultation will include, as appropriate, an examination of the patient, documentation of pertinent clinical, findings, review of the patient's laboratory and x-rays, an assessment or opinion, and recommendation(s). When opinions regarding operative procedures are requested the consultation note will, except in emergency situations so verified in the record, be recorded prior to surgery.

5. <u>Writing of Orders by Consultants</u>.   When consultants recommend procedures, procedure-related therapies, or general therapies for patients of another Medical Staff member, resident or service, every effort should be made to allow writing of the orders by the primary team. In unique situations where the primary team is unable to enter the orders, the consultant may enter the orders.

6. <u>Responsibility Following Consultation</u>. The findings and opinions of the consultant shall be reported to the primary team and ultimate authority and responsibility for medical decisions rests with the primary team.

## J.  END OF LIFE ISSUES

1.  Do Not Resuscitate (DNR)

   a.   The Medical Staff and residents are required to address resuscitation status at the beginning of each admission. Resuscitation status must also be reviewed or considered for rescission 1) before and after each procedure requiring anesthetic care (in the OR and perioperative period), 2) upon transfer between services, 3) when the patient experiences a significant change in condition, and 4) at the request of the patient or the patient's surrogate (if the patients is incompetent).

   b.   Orders and progress notes pertaining to DNR status shall be written in accordance with the Do Not Resuscitate (DNR) Policy (11-2). The physician writing the DNR order must enter an Advance Directives Progress Note documenting an assessment of the patient's competency and the competent patient's wishes, or the wishes of the surrogate and the relationship of the surrogate to the patient (in cases where the patient is incompetent). Residents may write orders for resuscitation status. For new orders, the resident physician must include documentation that he/she has conferred with the attending physician. Orders for continuation of previously existing resuscitation status do not require any additional documentation. The attending Medical Staff member will concur with the order, as documented in an addendum to the resident's progress note, within 24 hours.

2.  Advance Directives

   a.   The attending Medical Staff member has the authority to implement advance directives and write orders pertaining to advance directives in accordance with the Advance Directives Policy (11-1). The resident may also implement advance directives and write corresponding orders with documented attending concurrence.

b. Implementation of advance directives requires a progress note documenting 1) the patient's lack of decision-making capacity with little to no likelihood of regaining decision-making capacity within a reasonable period of time, 2) the treatment being withheld or withdrawn is life-sustaining, 3) the treatment to be withheld or withdrawn is treatment that the patient or his/her surrogate clearly directs to be withheld or withdrawn.

## K. DEATH ISSUES

1. Pronouncement

   a. The attending Medical Staff member or resident, or resident on-call, is responsible for pronouncement of death and documentation of the date and time of death in the medical record.

   b. The Medical Staff member or resident will advise the family of the patient's death. Nurses in the NHCUs may notify families of the patient's death.

   c. In cases where there is a question that the patient is brain dead:

      1. the criteria by which this judgment is made should be noted in the medical record.

      2. medical staff members or residents who normally are involved in organ procurement and transplantation may not be involved in the decision.

      3. the medical staff is responsible to ensure understanding by the family if brain death has occurred.

2. Reportable Deaths

   a. The following types of deaths are reportable (by telephone) to the county of jurisdiction's coroner's office immediately after expiration:

      1) All patients that expire within 24 hours of admission.

      2) All deaths in which the attending physician has not been in attendance of the decedent within 30 days prior to the death.

      3) All deaths resulting from accident, suicide, homicides or undetermined cause and manner (e.g. falls, poisonings, industrial accidents, automobile accidents).

      4) All deaths that occur in the emergency room, operating room, or during or shortly following a medical procedure.

5) Deaths resulting from or possibly related to therapeutic procedures.

6) Deaths resulting from thermal, chemical or radiation injury.

7) All cases in which the attending physician is unable or unwilling to certify the cause of death.

8) All deaths due to unexplained causes or under suspicious circumstances.

9) Deaths resulting from a disease, which may be hazardous, contagious, or which may constitute a threat to the health of the public.

10) Sudden deaths of persons appearing to be in good health.

11) All deaths in which trauma may be associated. Cases where the patient entered the medical facility due to trauma even though the subsequent death may be only indirectly attributed to the trauma.

12) All death while in custody of law enforcement officials or while incarcerated in a public institution.

b.  Death cases, which are subject to coroner's jurisdiction, must be released back to the medical center prior to obtaining consent for Medical center autopsy.

3.  Autopsies

a.  In the interest of improving patient care and clinical knowledge, every member of the clinical staff is expected to actively participate in securing autopsies in every instance where a patient dies while an inpatient or under the immediate care of this facility. It is the policy of this Eastern Colorado Health Care System that permission for autopsy will be requested in all non-coroners' cases.

b.  Particular effort will be made to secure permission for autopsy in the following situations:

1)  Unexpected deaths.

2)  Deaths in which autopsy may help to explain unknown and unanticipated medical complications to the attending physician.

3)  Deaths in which autopsy may help to allay concerns of the family and/or the public regarding the death, and to provide reassurance to them regarding it.

4) Deaths of patients who have participated in approved clinical trials (research protocols).

5) Deaths at any age in which it is felt that autopsy would disclose a known or suspected illness, which may also have a bearing on survivors or recipients of transplant organs.

6) Deaths known or suspected to have resulted from occupational or environmental hazards.

7) Unexpected or unexplained deaths which are apparently natural and not subject to a forensic medical jurisdiction.

c. Consent for autopsies will be obtained according to the Death Cases Policy (136-2). The Eastern Colorado Health Care System's Director has the authority to grant permission for autopsies in the absence of next of kin.

d. Pathology and Laboratory Service will notify the medical staff of all scheduled autopsies as well as notification regarding the completed autopsy reports. The resident who cared for the patient is expected to inform the rest of the treatment team, including the attending physician. This policy is detailed in the "Resident Manual" section of the Pathology and Laboratory Service's Autopsy Procedure Manual.

4. Organ/Tissue Donation

a. Affairs associated with organ/tissue donations shall be conducted in accordance with the Organ/Tissue Donation Policy (11-7).

b. A potential donor is an individual who suffers from a condition with terminal prognosis, for whom death is imminent or brain death has been declared, and who, in the opinion of the attending Medical Staff member and organ procurement organization (OPO) coordinator, meets the local OPO organ, tissue, or eye donation criteria.

c. Only a trained Designated Requestor may approach the family regarding organ/tissue donation.

e. The Consent for Donation of Anatomical Gifts form shall indicate the specific organ/tissue to be donated and is obtained by the Designated Requestor. The consent must be signed by the legal next of kin in the following order: spouse, adult child, parent, adult sibling, legal guardian, and person authorized for disposition of the body. Organ/tissue donation cannot take place if there is no legal guardian or next of kin to give consent for donation.

## SECTION 3. MEDICAL RECORDS

### A. GENERAL

1.   The medical record exists primarily as an electronic document. Exceptions include forms requiring input from multiple individuals and documents requiring wet signatures (i.e. operative reports, informed consents, etc.). A complete, current, and legible medical record will be maintained for each patient by clinical staff in attendance. All handwritten entries will be made in blue or black ink for reproducibility. The medical record will include identification data; problem list; chief complaint; past medical history; family history; history of present illness; physical examination; special reports; progress notes; provisional diagnosis (es); final diagnosis (es); and a discharge summary which includes the condition of the patient at the time of discharge and a plan of care for the patient

2.   A history and the results of physical examination will be recorded in the medical record within 24 hours of admission. If a history and physical cannot be entered expediently, an admission note describing the immediate assessment and goals should be entered in the medical record. If a patient is readmitted within 30 days the previous history and physical may be used if the patient's previous admission was for the same or a related problem, but an interval admission note will be made stating that the history and physical have been reviewed and no changes are noted or annotating changes that have occurred.

3.   All entries in the medical record should be dated, signed, and timed along with an indication of the discipline of the health care professional writing the note. In the instances where written documents are necessary, the signature must be legible.

4.   Progress notes sufficient to permit continuity of care and transferability will be entered at the time of observation or visit. Progress notes shall give a pertinent chronological report of the patient's course in the medical center or clinic and shall reflect any change in condition and the results of treatment(s). These notes shall be recorded at a frequency appropriate to the condition of the patients.

5.   Minimum documentation required includes:

a.   An admission note within 24 hours.

b.   Progress notes:

1) documenting the attending's involvement in the care of the patient

2)   entered at a frequency consistent with the patient's changing care needs.

3)   entered weekly on rehabilitation patients.

4) entered monthly on Nursing Home Care Unit patients.

6. Only those abbreviations and symbols in the current book approved by the Medical Records Committee will be used. (Medical Abbreviations by Neil Davis).

7. All clinical staff may document in the medical record. Certain administrative staff may enter demographic, administrative or legal data as identified in their position description.

8. The Medical Staff member must ensure that the record contains sufficient information to identify the patient, to support the diagnosis (es), to justify the treatment, and to document the results of care accurately.

9. Reports of procedures, tests, and results shall be recorded and authenticated in the medical record.

10. The medical record must contain documentation to authenticate that an active Medical Staff member has seen the patient and concurs with the diagnosis (es) and treatment plan. The Medical Staff member must also support his/her continued supervision of the resident through appropriate documentation in the medical record.

11. Podiatrists, optometrists and dentists (except oral/maxillofacial surgeons) are only responsible for the portion of the history and physical that relates to their specialty.

12. Discharge summaries must be dictated upon discharge, for an "against medical advice" (AMA) discharge and in a death case. These discharge summaries should be dictated as soon as possible.

13. The summary must include the final diagnosis (es), problems, operations and/or procedures performed, a concise recapitulation of the reason for admission, significant findings, treatment rendered, dietary restrictions, and an activity plan. It should also include the condition of the patient at discharge (stated in measurable terms), date patient is capable of returning to employment or pre-hospital activity, period of convalescence (if required), recommendations for follow-up treatment, medications given, referrals to community service agencies, and an opinion as to competency to handle funds when any psychiatric disorder is involved. These summaries will be electronically signed as soon after receipt as possible.

14 For all patients followed in the outpatient area, the cover sheet should include a problem list consisting of known significant diagnoses and conditions, an operative and invasive procedures list, a list of current medications, and any drug sensitivities.

15. Final diagnosis (es), problems, operation(s), and/or procedure(s) must be written using terminology consistent with the latest directives from VA Central Office.

16. The medical portions of the record shall be completed within 30 days of discharge (this includes transcription and authentication of the summary).

17. Final necropsy protocols must be made part of the patient's medical record within 30 working days for routine cases and within 60 working days for complicated cases.

18. Respiratory care services must be documented in the patient's medical record, in relation to the type of therapy, dates and times of administration, and effects of therapy (to include any adverse reactions). A physician's periodic entry must describe the pertinent clinical evaluation and results of therapy.

19. The written consent of the patient or legal guardian, if the patient is mentally incompetent, is required for release of medical information to any person, agency, or facility (including practitioners and other medical centers). The written consent obtained for all procedures, investigations, and released medical information shall be kept in the medical record.

20. Medical records may only be removed from the Eastern Colorado Health Care System's jurisdiction and safekeeping through a court order, subpoena, or statute, in accordance with VA regulations. Medical records are the property of the Department of Veterans Affairs and will not be removed from the medical center or clinic premises without permission of the Eastern Colorado Health Care System's Director. Procedural guidelines will be followed as outlined in the Release of Information from Medical Records (136-9) and Producing VA Medical Records for Court Actions (136-57).

21. For the purposes of research study and review, members of the Medical Staff who hold appointments and clinical privileges will be afforded access to medical records as permitted by federal law and regulations. Access by other individuals will be governed by VA regulations.

22. A medical record will not be permanently filed until it is completed by the responsible Medical Staff member or is ordered to be filed by the Medical Records Committee with approval of the Clinical Executive Board

23. Medical Staff members and residents who care for patients in the outpatient setting will complete a progress note at the time of the encounter that supports the level of care, lists procedures, and relevant primary and secondary diagnoses for each encounter. The encounter form identifying the level of care, procedures, and primary and secondary diagnoses will be completed for each outpatient encounter. The presence and involvement of the attending will also be documented.

## SECTION 8.  QUALITY OF CLINICAL SERVICES

### A.  GENERAL

1. The Service Chief will be held responsible for the quality of care rendered to inpatients and outpatients by staff assigned to his/her service. A complete medical record for each patient will be assured.

2. The medical staff will participate in organizational performance improvement activities. When the process is dependent primarily on the activities of the clinically privileged staff, the processes reviewed will include but not be limited to:  medical assessment and treatment of patients, use of medications, use of blood and blood components, operative and invasive procedures, clinical practice patterns, and identification of departures from established patterns of clinical practice.

3. The entire patient care evaluation activity must be documented and the results reported through appropriate channels to the Clinical Chiefs of Services or the Performance Improvement Council. The evaluation activity shall be continuous and comprehensive, covering conditions and problems treated and procedures performed.

4. The results of quality of care evaluation shall be specifically reflected in other quality protective functions of the Medical Staff, including appointment and repriviliging of Medical Staff members. Control of the utilization of the Eastern Colorado Health Care System's resources, the continual monitoring of practice within the clinical staff, and the provision of continuing professional education is the responsibility of the Medical Staff, in cooperation with Eastern Colorado Health Care System management.

5. Staff members, who fail to complete their assignments, including medical records, will be subject to disciplinary actions according to procedures outlined in MP-5, Part II.

6. All credentialed and privileged staff and advance practice nurses (non-LIPs) will participate in an ongoing performance improvement peer review process according to the Peer Review Policy (11-32). These performance improvement activities include but are not limited to the following:  operative and invasive procedure reviews, review and analysis of external peer review program (EPRP) data, medical record review, morbidity and mortality (M&M) conferences, review of medication errors, participation as a member of a root cause analysis (RCA) team or a process action team (PAT), review of resident supervision, analysis and review of National Surgical Quality Improvement Program (NSQIP) data.

23

## SECTION 9.  GENERAL RULES REGARDING RESEARCH INVESTIGATION

### A.  GENERAL

1. Any research project conducted at or through the Eastern Colorado Health Care System, which involves human subjects, must be approved by the Colorado Multiple Institutional Review Board (COMIRB).  The COMIRB, as defined in its policies and procedures, must maintain adequate VA representation.

2. The investigational protocol must be in compliance with all applicable federal regulations and COMIRB policies.  It is the investigator's responsibility to provide the Eastern Colorado Health Care System (via the Medical Research Service) with a copy of the protocol, protocol summary, authorization to release health information, and informed consent document as required by COMIRB, prior to submitting the project for COMIRB review.  The COMIRB is responsible for assuring that all approved protocols are in compliance with the Federal Policy for the Protections of Human Subjects (38 CFR Part 16.101), Food and Drug Administrations regulations, the Health Insurance Portability and Accountability Act (HIPAA), and local policies and procedures.  It is the investigator's responsibility to ensure that the research project is conducted only as approved by the COMIRB.

3. All patients/subjects participating in a clinical research project must first give their informed consent and authorization to release health information.  If someone other than the investigator conducts the interview and obtains consent, the PI should formally delegate this responsibility, and the person so delegated must have received appropriate training to perform this activity.  It is the investigator's responsibility and/or his designee to obtain informed consent and authorization and to ensure that it is obtained without coercion, deception, or undue influence.  The investigator must also ensure that the patient/subject has a good understanding of the risks and benefits of participation in the research project and has adequate time to consider his/her decision to participate.  In projects for which the COMIRB requires that written informed consent and authorization be obtained, documentation of the informed consent and authorization must be made in the electronic medical record.  This documentation consists of a progress note indicating that informed consent and authorization was obtained and a copy of the consent placed in the medical record.  A paper copy of the signed consent and authorization must also be given to the patient and the investigator must keep a copy in his/her study records.  In the case of incompetent or cognitively impaired subjects, research may be conducted with proxy consent only when it is obtained in accordance with the VA Research and Development Policy (M-3, Part I, Chapter 9) and specifically approved by the COMIRB.

REFERENCES

M-1, Part 1, Ch. 17,
M-3, Part 1, Ch. 9, Research and Development
M-2, Part 1, Ch. 30, June 21, 1994.


Eastern Colorado Health Care System Policies

00-24   Restraint and Seclusion
00-61   Ambulatory Surgery: Utilization Policy

11-1    Advance Directives
11-2    Do Not Resuscitate (DNR)
11-4    Resident Supervision
11-7    Organ/Tissue Donation
11-8    Conscious Sedation

136-2   Death Cases
136-4   Observation Bed Status
136-9   Release of Information from Medical Records
136-15  Completion of Medical Records
136-20  Lodging of Patients
136-26  Informed Consent

119-1   Outpatient Pharmacy
119-2   Use of Investigational Drugs
119-6   Therapeutic Substitutions of Medications
119-9   Processing of Patients Medications upon Admission
119-20  Self Medication under Nursing Home Supervision

116-3   Electroconvulsive Therapy (ECT)

38 CFR, Part 16.101

Medical Staff Bylaws

Autopsy Procedure Manual

VHA Handbook 1100.19 Credentialing and Privileging

Health Insurance Portability and Accountability Act

Medical Abbreviations, 10th Edition, (Davis, Neil M.)

VHA Handbook 11-00 Narcotics

JCAHO Mock Survey

38 CFR, Part 11.101

Section 187(a) Social Security Act (EMTALA)